

FILED BY_____D.C.

JAN 12 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

VIVERE ADVENTURES, LTD.,
    Plaintiff,

v.                                          Case No. 0:25-cv-61065-WPD

STARBOARD YACHT GROUP, LLC,
    Defendant.
_____/

### THIRD-PARTY COMPLAINT AGAINST SEAKEEPER, INC.

Defendant/Third-Party Plaintiff Starboard Yacht Group, LLC ("SYG"), pursuant to

Federal Rule of Civil Procedure 14, brings this Third-Party Complaint against Seakeeper, Inc.

("Seakeeper") and alleges as follows:

### PARTIES

1.      Third-Party Plaintiff Starboard Yacht Group, LLC is a Florida limited liability

company with its principal place of business in Dania Beach, Broward County, Florida.

2.      Third-Party Defendant Seakeeper, Inc. is a Maryland corporation with its

principal place of business at 45310 Abell House Lane, Suite 350, California, Maryland 20619.

Seakeeper is a wholly-owned subsidiary of Madison Industries, a privately held corporation with

assets exceeding $8 billion.

### JURISDICTION AND VENUE

3.     This Court has original admiralty jurisdiction over this action pursuant to 28 U.S.C. § 1333 and supplemental jurisdiction over these third-party claims pursuant to 28 U.S.C. § 1367 as they arise from the same transaction or occurrence as the underlying complaint.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the underlying claims arose in this District and Seakeeper conducted substantial business in this District through its dealer network, including SYG.

## FACTUAL ALLEGATIONS

### A. The Dealer Relationship

5.     In 2018, Seakeeper and SYG entered into a Certified Dealer Non-Exclusive Agreement (the "Dealer Agreement") pursuant to which SYG became an authorized Seakeeper dealer for the sale, installation, and service of Seakeeper gyroscopic stabilizer products.

6.     For approximately seven (7) years, SYG was a high-performing Seakeeper dealer, achieving the $500,000+ sales tier and maintaining excellent customer relationships.

7.     SYG invested substantial resources in Seakeeper-specific training, inventory, marketing materials, and customer development in reliance on the continued dealer relationship.

### B. The Vivere Contract

8.     On or about January 7, 2025, Plaintiff Vivere Adventures, Ltd. contracted with SYG for the installation of a Seakeeper 2 stabilizer (Part #90469) on its 2021 Contender 34 ST vessel (M/Y Formosa), as reflected in Repair Order #42289.

9.     The total contract price was $78,209.77, of which $26,375.00 was for the Seakeeper 2 unit itself.

10.    Vivere made payments to SYG totaling $78,209.77 between January 7, 2025 and March 4, 2025.

### C. Seakeeper's Termination and Refusal to Ship

11.    On December 2, 2024—before the Vivere contract was executed—Seakeeper sent SYG a termination notice purporting to terminate the Dealer Agreement "effective immediately."

12.    Despite knowledge that SYG had pending customer orders, Seakeeper terminated the dealer relationship and cut off SYG's access to Seakeeper products.

13.    On January 15, 2025, SYG requested a quote for the Seakeeper 2 unit needed for the Vivere project.

14.    On January 27, 2025, Tom Cole, Seakeeper's Regional Aftermarket Manager, explicitly refused to fulfill SYG's order, stating: "Unfortunately, we are unable to fulfill this order at this time."

15.    At the time of this refusal, Seakeeper held approximately $30,000 in funds that SYG had previously paid for equipment. Seakeeper retained these funds while refusing to ship the ordered equipment.

16.    Despite repeated requests by SYG's CFO Brian Kenny between February 3, 2025 and February 18, 2025, Seakeeper delayed refunding the retained funds, further damaging SYG's cash position and ability to mitigate.

### D. The Coordinated Attack Pattern

17. Seakeeper's termination of SYG was not an isolated business decision but part of a coordinated scheme to destroy SYG's business and transfer its market share to favored competitors, including TriSea Stabilizers.

18. The termination was effective January 31, 2025—the same date as unrelated settlement proceedings in other coordinated litigation against SYG, demonstrating coordination among multiple actors.

19. Seakeeper's conduct stands in stark contrast to industry standards. When the same interference tactics were attempted against Voith (another vendor on an SYG project), Voith immediately refused and enforced its contractual obligations to SYG.

20. Aaron Leatherwood, the interference coordinator, responded to Voith's refusal with "As expected," demonstrating that professional vendors reject such interference attempts and that Seakeeper's coordination was aberrant and intentional.

## COUNT I – BREACH OF CONTRACT

21. SYG incorporates paragraphs 1 through 20 as if fully set forth herein.

22. The 2018 Dealer Agreement constitutes a valid and enforceable contract between SYG and Seakeeper.

23. SYG performed all conditions precedent under the Dealer Agreement, including maintaining sales volume, completing training, and providing customer service.

24. Seakeeper breached the Dealer Agreement by: (a) terminating the relationship without proper cause; (b) refusing to fulfill pending orders; (c) retaining SYG's funds while refusing to ship ordered equipment; and (d) failing to provide adequate notice and cure periods.

25. As a direct and proximate result of Seakeeper's breach, SYG has suffered damages including but not limited to the amounts claimed by Vivere in this action, lost profits, reputational harm, and consequential damages.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT

26. SYG incorporates paragraphs 1 through 25 as if fully set forth herein.

27. SYG had a valid and enforceable contract with Vivere Adventures for the installation of a Seakeeper 2 stabilizer (RO #42289).

28. Seakeeper had knowledge of SYG's contract with Vivere, as evidenced by SYG's January 15, 2025 request for a quote specifically for this project.

29. Seakeeper intentionally and unjustifiably interfered with SYG's contract with Vivere by refusing to ship the contracted equipment, making SYG's performance impossible.

30. Seakeeper's interference was without justification, as it could have fulfilled the order or allowed SYG a reasonable transition period to complete pending projects.

31. As a direct and proximate result of Seakeeper's interference, SYG has suffered damages including the claims asserted by Vivere in this action.

## COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH

32. SYG incorporates paragraphs 1 through 31 as if fully set forth herein.

33. Every contract contains an implied covenant of good faith and fair dealing.

34. Seakeeper breached the implied covenant by: (a) terminating the dealer relationship with pending customer orders; (b) refusing to allow completion of existing projects;

(c) retaining SYG's funds while refusing to perform; and (d) coordinating the termination with other adverse actions against SYG.

35.     As a direct and proximate result of Seakeeper's breach, SYG has suffered damages.

## COUNT IV – UNJUST ENRICHMENT

36.     SYG incorporates paragraphs 1 through 35 as if fully set forth herein.

37.     SYG conferred a benefit on Seakeeper by paying approximately $30,000 for equipment that Seakeeper refused to ship.

38.     Seakeeper had knowledge of and accepted this benefit.

39.     Under the circumstances, it would be inequitable for Seakeeper to retain this benefit without providing the contracted equipment or prompt refund.

40.     SYG is entitled to restitution of all amounts paid to Seakeeper that were not applied to delivered products.

## COUNT V – INDEMNIFICATION AND CONTRIBUTION

41.     SYG incorporates paragraphs 1 through 40 as if fully set forth herein.

42.     If SYG is found liable to Vivere on any claim in this action, such liability would be the direct result of Seakeeper's conduct in terminating SYG's dealership and refusing to ship the contracted equipment.

43.     Seakeeper's conduct was the sole proximate cause of any damages suffered by Vivere.

44.     SYG is entitled to full indemnification from Seakeeper for any judgment entered against SYG in favor of Vivere, including principal, interest, costs, and attorneys' fees.

45.     In the alternative, SYG is entitled to contribution from Seakeeper for any portion of damages attributable to Seakeeper's conduct.

### PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiff Starboard Yacht Group, LLC respectfully requests that this Court enter judgment against Third-Party Defendant Seakeeper, Inc. as follows:

a. Awarding compensatory damages in an amount to be proven at trial;

b. Awarding full indemnification for any judgment entered against SYG in favor of Vivere;

c. Awarding restitution of all funds retained by Seakeeper;

d. Awarding pre-judgment and post-judgment interest;

e. Awarding costs and attorneys' fees to the extent permitted by law; and

f. Granting such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: January 12, 2026

/s/ Charles Jacob Stratmann
**CHARLES JACOB STRATMANN**
*a/k/a Jake Stratmann, Interim Pro Se*
As Managing Member of Starboard Yacht Group, LLC

850 NE 3rd Street, Suite 208
Dania Beach, Florida 33004
Telephone: (954) 873-8546
Email: jake@starboardyacht.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2026, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is

being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.

/s/ Charles Jacob Stratmann
CHARLES JACOB STRATMANN