

**850 NE 3rd St, Suite 208**
**Dania Beach, FL 33004**
**Phone: (954)376-5400**

## Repair Order
### Due: $15,537.01

**Doc Number:** 42289
**Service Writer:** Travis Moore
**Date Printed:** 02/03/2025
**Date In:** 01/03/2025

**Vivere Adventures Ltd - M/Y Formosa**
**1800 Se 10th ave ste 400**
**ft lauderdale, florida  3**

### Customer Information
**Cell Phone:** +33615574230
**Email:** master@yachtformosa.com

## Summary

| Approve | Decline | Unit | Job | Job Total |
|---|---|---|---|---|
| ☑ | ☐ | 2021 Contender 32 ST | ADDITIONAL BATTERY BANK | $1,589.63 |
| ☑ | ☐ | 2021 Contender 32 ST | Seakeeper 2 (unit only) + Freight | $26,375.00 |
| ☑ | ☐ | 2021 Contender 32 ST | Installation - Seakeeper 2 | $14,600.00 |
| ☑ | ☐ | 2021 Contender 32 ST | Parts - Installation Seakeeper 2 | $3,635.00 |
| ☑ | ☐ | 2021 Contender 32 ST | Foundation Fabrication | $7,906.35 |
| ☑ | ☐ | 2021 Contender 32 ST | Interferences | $500.00 |
| ☑ | ☐ | 2021 Contender 32 ST | Vessel Protection & Post Work Clean Up/Wash | $3,222.85 |
| ☑ | ☐ | 2021 Contender 32 ST | Sea Trial & Commissioning & Warranty Registration | $0.00 |
| ☑ | ☐ | 2021 Contender 32 ST | Storage will be on final invoice | $0.00 |
| ☑ | ☐ | 2021 Contender 32 ST | Electric will be on final invoice | $0.00 |
| ☐ | ☐ | 2021 Contender 32 ST | CHANGE ORDER - Bile area Hull bonding and interferences | $11,630.00 |

| | |
|---|---|
| **Job Subtotal:** | $69,458.83 |
| **Misc:** | $960.50 |
| **Job Parts Subtotal:** | $34,435.33 |
| **Job Labor Subtotal:** | $31,850.00 |
| **Job Misc Item Subtotal:** | $3,173.50 |
| **Tax:** | $4,457.35 |
| **Total:** | $74,876.68 |
| **Less Deposits:** | ($59,339.67) |
| **Total Due:** | $15,537.01 |

Thank You For Your Business.

NO RETURNS ON ELECTRICAL PARTS!

**Signature:**_____

Page 1 of 4          42289

# Detail

**Unit**    2021 Contender 32 ST        **Color:**                      **Keyboard:**

        **VIN/HIN/Serial No:**        **Plate:**        **Odom/Hrs In:**0      **Out:**0

## ADDITIONAL BATTERY BANK

**Description:**

| | |
|---|---|
| **Parts Subtotal** | $1,589.63 |
| **Job Subtotal** | $1,589.63 |
| **Approve:** ☑ | **Decline:** ☐ |

## Seakeeper 2 (unit only) + Freight

**Description:** Seakeeper 2 (Part #: 90469)

| | |
|---|---|
| **Parts Subtotal** | $25,400.00 |
| **Freight** | $975.00 |
| **Job Subtotal** | $26,375.00 |
| **Approve:** ☑ | **Decline:** ☐ |

## Installation - Seakeeper 2

**Description:** Installation of new Seakeeper 2. Attached lifting spreader bar to sphere. Utilizing boom crane, lift and hoist sphere into vessel aft bilge area. Place sphere on Seakeeper foundation. Re-bolt and torque gimbal bearing caps. Re-assemble brake arms and attached brake cylinders. Hook up hydraulic hose and re-pressurize the hydraulic system.
Install DC breakers to existing Distribution panel to power Seakeeper unit
Run display wiring to helm and install display
Fill and purge glycol coolant system. Energize and spool up the unit to test and confirm functionality.

**Labor**

| Description |
|---|

| | |
|---|---|
| **Labor Subtotal** | $14,000.00 |
| **Shop Supplies** | $600.00 |
| **Job Subtotal** | $14,600.00 |
| **Approve:** ☑ | **Decline:** ☐ |

## Parts - Installation Seakeeper 2

**Description:** Seawater pump, plumbing, AC & DC breaker, wiring, thrum hulls, ball valve, strainer etc. to complete installation.
Inclusion of 2 group 31 AGM batteries to provide addition DC power.
Addition Battery Charger.

| | |
|---|---|
| **Parts Subtotal** | $3,635.00 |
| **Job Subtotal** | $3,635.00 |
| **Approve:** ☑ | **Decline:** ☐ |

## Foundation Fabrication

**Description:** Custom Build foundation using high density Core material, vinylester resin and varying weights of fiberglass. Foundation embedded with 1" aluminum plate as required by Seakeeper.

| | |
|---|---|
| **Parts Subtotal** | $2,026.35 |

**Labor**

| Description |
|---|

| | |
|---|---|
| **Labor Subtotal** | $5,600.00 |
| **Shop Supplies** | $280.00 |

| | |
|---|---|
| **Job Subtotal** | **$7,906.35** |
| Approve: ☑ | Decline: ☐ |

## Interferences

**Description:** To Be Determined.  Need to see vessel.

| | |
|---|---|
| **Shop Supplies** | **$500.00** |
| **Job Subtotal** | **$500.00** |
| Approve: ☑ | Decline: ☐ |

## Vessel Protection & Post Work Clean Up/Wash

**Description:** Prepare vessel deck, all exterior and/or interior areas with coverguard and yacht protect.
Remove protection and clean vessel
Standard boat wash.

| | |
|---|---|
| **Parts Subtotal** | **$1,784.35** |

### Labor

| Description |
|---|

Pick Up Vessel in Fort Pierce
Protect vessel, Traffic areas and hatches

| | |
|---|---|
| **Labor Subtotal** | **$1,370.00** |
| **Shop Supplies** | **$68.50** |
| **Job Subtotal** | **$3,222.85** |
| Approve: ☑ | Decline: ☐ |

## Sea Trial & Commissioning & Warranty Registration

**Description:** Seatrial vessel.
Commission Seakeeper unit. Perform seatrial roll reduction report.
Register the warranty

| | |
|---|---|
| **Job Subtotal** | **$0.00** |
| Approve: ☑ | Decline: ☐ |

## Storage will be on final invoice

**Description:** 3$/ft / day

| | |
|---|---|
| **Job Subtotal** | **$0.00** |
| Approve: ☑ | Decline: ☐ |

## Electric will be on final invoice

**Description:** 45$/p day

| | |
|---|---|
| **Job Subtotal** | **$0.00** |
| Approve: ☑ | Decline: ☐ |

## CHANGE ORDER - Bile area Hull bonding and interferences

**Description:** Optional SK2 installation Area in aft bilge area below deck.
Deck cut and modification
grinding of hull liner, stringers and hull
Additional bonding of hull to stringers, liner, and transverse before SK foundation is fabricated.

### Labor

| Description |
|---|

| | |
|---|---:|
| **Labor Subtotal** | $10,880.00 |
| **Shop Supplies** | $750.00 |
| | |
| **Job Subtotal** | $11,630.00 |
| **Approve:** ☐ | **Decline:** ☐ |

| | |
|---|---:|
| **All Jobs Subtotal:** | $69,458.83 |
| **Freight:** | $5.00 |
| **WC Fees 3%:** | $955.50 |
| **Tax:** | $4,457.35 |
| **Total:** | $74,876.68 |
| **Less Deposits:** | ($59,339.67) |
| **Total Due:** | $15,537.01 |



December 2, 2024

**Starboard Yacht Group**
850 NE 3rd Street, Suite 106
Dania Beach, FL 33004

Re: Termination of the Seakeeper Certified Dealer Non-Exclusive Agreement

Dear Starboard Yacht Group:

Seakeeper, Inc. ("Seakeeper") provides this formal notice in accordance with Article XI, Term and Termination of the Certified Dealer Non-Exclusive Agreement ("Agreement") between Seakeeper and Starboard Yacht Group ("Dealer") with the intention of terminating the Agreement, effective immediately.

Per Section 72, During the term of this Agreement or any renewal thereof, this Agreement may be terminated by SEAKEEPER by written notice for any one or more of the following clauses, "**72.4. If DEALER conducts itself or its business so as to adversely affect the good name, reputation or goodwill of SEAKEEPER or the Product, or uses any Trademark in a manner not approved by SEAKEEPER**".

The decision to terminate this relationship is based on the following reasons:
- **Process Proficiency:** There has been insufficient understanding of Seakeeper's service processes, which has affected operational efficiency;
- **Mission Alignment:** A misalignment with Seakeeper's mission and core values has made it increasingly difficult to sustain a cohesive partnership;
- **Communication Gaps:** A persistent lack of transparent communication with the sales team has impeded collaboration and effective business operations;
- **Timeliness:** Failure to provide required information within agreed-upon timelines has disrupted workflows and delayed critical initiatives;
- **Sales Performance:** A consistent year-over-year decline in sales has raised concerns about growth and long-term viability; and
- **Outstanding Balances:** Financial obligations have consistently exceeded the credit limits provided, which has created an unsustainable situation.

Please review Article XII – Duties of Dealer Upon Termination and ensure compliance with all points. Please provide a list of any materials that are required to be returned to Seakeeper per Clause 75.6 of the Agreement and an RMA will be provided, along with pre-paid shipping labels.

Respectfully,

Seakeeper Management

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7


## CERTIFIED DEALER
NON-EXCLUSIVE AGREEMENT



**CHOOSE ONE** Dealer

This Agreement is made and entered into, as of __12__ day of __April__ , 20__19__.

**BY AND BETWEEN**

**Starboard Yacht Group** _____ a business entity organized under the laws of __Florida__ and whose principal place of business is at:  850 NE 3rd St Ste 208, Dania Beach, FL 33004

("DEALER") and: SEAKEEPER, INC., a Delaware corporation having principal offices at 45310 Abell House Lane, Suite 350, California, MD 20619 ("SEAKEEPER, INC.").

**WITNESSETH**

In consideration of the following undertakings and promises of DEALER and SEAKEEPER, INC., and the exchange of valuable consideration, the parties mutually covenant and agree as follows:

## ARTICLE I - DEFINITIONS

1.  In this Agreement the following definitions shall apply:

    1.1  **"Products"** - shall mean the current model products of SEAKEEPER, INC., described in the body of this agreement or on SEAKEEPER, INC published documentation and website.

    1.2  **"Trademark"**- shall mean any trademark, trade dress, domain name, or other commercial designation used to represent or describe any of the Products or indicate SEAKEEPER, INC., as the source of goods or services.

    1.3  **"Agreement"** – shall mean this Agreement and all exhibits and/or attachments thereto.

2.  The SEAKEEPER, INC., partner network includes the following classifications:

    2.1.  **ELITE DEALER** – a certified and non-exclusive partner whose sole business is the sale, service, installation, and potential OEM commissioning of the Products and represents no other brands or companies. Unless special terms for an ELITE DEALERs are expressly set forth in this Agreement and differ from regular DEALER terms, any reference herein to DEALER shall include an ELITE DEALER.

    2.2.  **DEALER** – a certified and non-exclusive partner who represents other brands or companies and participates in at least one of the following regarding the Products:

        2.2.1     Sale

        2.2.2     Installation

        2.2.3     OEM commissioning

        2.2.4     Service (warranty & non-warranty)

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



## ARTICLE II - APPOINTMENT OF DEALER

3. SEAKEEPER, INC., hereby appoints DEALER as an authorized SEAKEEPER dealer at its current geographical location for the term set forth under this Agreement, and the DEALER hereby accepts such appointment on the terms and conditions of this Agreement.

4. The DEALER shall notify SEAKEEPER, INC., in writing where the DEALER knows or has reason to believe that the Products are intended to be supplied and/or transferred to a national jurisdiction outside the national jurisdiction in which DEALER has its SEAKEEPER dealer location.

5. Nothing herein contained shall be construed as preventing or otherwise limiting SEAKEEPER, INC.'s, right to sell, directly or through third parties, its Products or any other product to customers in any jurisdiction worldwide. Nothing herein contained shall be construed as preventing or limiting SEAKEEPER, INC. from appointing other or additional ELITE or regular DEALERS or distributors of Products in any geographic area, and on terms and conditions which may be different from those offered to DEALER in this Agreement.

6. The DEALER shall be deemed at all times to be an independent contractor and nothing contained herein shall be deemed to create an agency, partnership, joint venture, or other relationship of any kind between SEAKEEPER, INC., and the DEALER. All sales representatives and employees employed by the DEALER to perform this Agreement shall be the sole and exclusive responsibility of the DEALER. Any agreements between the DEALER and its employees or representative shall clearly specify that such persons are serving solely under the direction and control of or under contract with the DEALER.

7. The DEALER, its officers, employees and/or agents are not authorized to bind, to transact business, incur obligations express or implied, or otherwise act in any manner, in the name or on behalf of SEAKEEPER, INC., or to make any promise, warranty or representation with respect to the Products or the warranty on the Products or on behalf of SEAKEEPER, INC., except as expressly previously authorized by SEAKEEPER, INC., in writing.

## ARTICLE III - DEALER DUTIES

8. The ELITE DEALER agrees to represent SEAKEEPER, INC., as DEALER'S only product or service offering, and no other brands shall be offered or sold, directly or indirectly, by DEALER or any of its affiliates. All DEALERS are prohibited from selling SEAKEEPER, INC., products (including, without limitation, the Products), to any other DEALER. The SEAKEEPER, INC., products (including, without limitation, the Products) may only be offered for sale by DEALERS to original retail purchasers. All DEALER employees, principals, vehicles and equipment owned or otherwise used by and branded by SEAKEEPER and the ELITE DEALER are to be used solely for the sale, installation, service and potential OEM commissioning of the Products. ELITE DEALER agrees to represent SEAKEEPER, INC., as DEALER's only product or service offering. No other brands or services shall be offered.

9. The following DEALER location requirements must be met in order to have a location listed on www.seakeeper.com:

   9.1 Permanent commercial business with a physical address registered to the DEALER. Cannot be a private residence.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT

**SEAKEEPER**

9.2 DEALER employee(s) must be SEAKEEPER trained, certified, and available during normal business working hours and able to meet the requirements of Section 28-36 of this agreement.

9.3 Location to and from which product can be shipped and received.

10. All DEALER personnel designated by DEALER to perform the DEALER's undertakings hereunder, shall attend SALES, INSTALLATION & SERVICE training sessions conducted by SEAKEEPER, INC., at places and times coordinated between the DEALER and SEAKEEPER, INC. Unless a DEALER employee or agent has successfully completed such training sessions, DEALER may not use such person for sales, installation or any service of the products.

11. DEALERS are prohibited from selling Products to OEM/boat manufacturers. Products may only be offered for sale to original retail purchasers.

12. All DEALER's must complete training within 3 months after execution of this DEALER agreement.

13. All costs and expenses of the DEALER with respect to such trainings shall be borne by the DEALER:

13.1 If training is conducted at a SEAKEEPER, INC., facility, or SEAKEEPER organized training event at any other location, DEALER will only be responsible for travel costs and expenses of its personnel whom it sends to the training. There is no cost for the actual training course and certification.

13.2 If the DEALER is unable to attend a scheduled training and requires individual training services at the DEALER's facility or at a DEALER location, the DEALER undertakes to provide all the necessary facilities and cover all travel related expenses of the SEAKEEPER, INC., training representative.

13.3 Once training is complete and the DEALER has been certified, the DEALER will be entitled to SEAKEEPER, INC., equipment and parts pricing discounts and DEALER will be recognized on the SEAKEEPER, INC. website as a DEALER or ELITE DEALER.

14. Ongoing training is important to maintain product knowledge, keep up with product changes and learn about new product offerings. To provide high-level support services for SEAKEEPER, INC., and the DEALER's customers, it is required that the DEALER maintain up-to-date trained support staff.

14.1 The DEALER must make every effort to attend training courses provided by SEAKEEPER, INC., at the SEAKEEPER, INC., factory, at the DEALER designated facility or near the DEALER region.

14.2 Training attendance is required with the following occurrences:

14.2.1 Initial DEALER training, within 3 months after execution of DEALER agreement.

14.2.2 Change in DEALER's personnel designated by DEALER to perform the DEALER's undertakings.

14.2.3 New product or model launch by SEAKEEPER, INC.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7

## CERTIFIED DEALER
NON-EXCLUSIVE AGREEMENT



14.2.4   Once per year or at other agreed upon schedule depending on availability, date and location.

### PRODUCT SALES

15. Seakeeper utilizes a tiered discount structure that rewards our DEALERS for their continued support and growth with Seakeeper.  Annual discount levels will be based on SEAKEEPER, INC. revenue associated with DEALER purchases of SEAKEEPER, INC. products commencing on the Agreement signing date through December 31st of the following year, and annually thereafter.

    For example: If DEALER's purchases total $100,000 in the 2018 calendar year (January 1 – December 31, 2018), they would be awarded Tier 2 discounts for the next calendar year. Products must ship prior to December 31 in order to be counted towards DEALER's current calendar year purchases.  Discount levels are subject to annual change by SEAKEEPER, INC., by written notice to any DEALER.

16. In the event DEALER's current calendar year purchases exceed a certain tier threshold, DEALER will be granted the next tier pricing for any purchases made following the tier change during the current calendar year.

17. Consistent receipt of Warranty Registrations is required for purchases to apply towards DEALER's Tier Discount Level.

### DEALER TIER PRICING

| TOTAL YEARLY SALES | SEAKEEPER 2 | SEAKEEPER 3 | SEAKEEPER 6 | SEAKEEPER 9 SEAKEEPER 7HD | SEAKEEPER 10 SEAKEEPER 12HD | SEAKEEPER 26 SEAKEEPER 20HD | SEAKEEPER 35 SEAKEEPER 30HD |
|---|---|---|---|---|---|---|---|
| Tier 1 \| < $100,000 | 10% | 10% | 10% | 15% | 15% | 15% | 15% |
| Tier 2 \| $100,000 - $500,000 | 15% | 15% | 15% | 20% | 20% | 20% | 20% |
| Tier 3 \| $500,000 - $1,000,000 | 20% | 20% | 20% | 25% | 25% | 25% | 25% |
| Tier 4 \| > $1,000,000 | 22% | 22% | 22% | 27% | 27% | 27% | 27% |

TABLE 1

### ELITE DEALER TIER PRICING

| TOTAL YEARLY SALES | SEAKEEPER 2 | SEAKEEPER 3 | SEAKEEPER 6 | SEAKEEPER 9 SEAKEEPER 7HD | SEAKEEPER 10 SEAKEEPER 12HD | SEAKEEPER 26 SEAKEEPER 20HD | SEAKEEPER 35 SEAKEEPER 30HD |
|---|---|---|---|---|---|---|---|
| Tier 1 \| < $500,000 | 15% | 15% | 15% | 20% | 20% | 20% | 20% |
| Tier 2 \| $500,000 - $1,500,000 | 20% | 20% | 20% | 25% | 25% | 25% | 25% |
| Tier 3 \| $1,500,000 - $2,500,000 | 25% | 25% | 25% | 30% | 30% | 30% | 30% |
| Tier 4 \| > $2,500,000 | 27% | 27% | 27% | 32% | 32% | 32% | 32% |

TABLE 1-1

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



18. Price lists for Options, Accessories, and Shipping schedule may be found in 'EXHIBIT B'.

19. The DEALER shall devote its best efforts to promote and sell the Products and enhance the good will and reputation of SEAKEEPER, INC. The DEALER represents that it possesses the experience, skills and resources required to carry out these marketing and distributing activities.

20. The DEALER shall submit to SEAKEEPER, INC., periodical sales forecasts as shall be requested from time to time by SEAKEEPER, INC.

21. The DEALER shall employ qualified personnel to solicit orders for the Products and provide the services.

22. SEAKEEPER, INC.'s expectation, in order to maintain consistency in marketing and avoid customer confusion, is that the DEALER will not sell Products at a price above MSRP as indicated on any published, listed, or provided price list document(s), from SEAKEEPER INC., such as found on www.seakeeper.com. If the DEALER believes that local market conditions or an unusual project call for a price above MSRP, DEALER shall notify SEAKEEPER promptly.

23. The DEALER shall obtain and maintain all licenses and authorizations required to enable DEALER to import, transport, sell, deliver and market the Products within the jurisdictions of its places of business and perform all the terms of this Agreement. DEALER is solely responsible for its own business operations, including operating and employment practices.

24. The DEALER shall keep SEAKEEPER, INC., informed of any new or proposed regulation, decrees or laws in the jurisdictions of its places of business, which may affect this agreement or the business, products, or trademarks of SEAKEEPER, INC.

25. The DEALER shall provide effective marketing support to maintain the goodwill of SEAKEEPER, INC., and the Products in the jurisdictions of its places of business. Such responsibilities to include but not be limited to the following:

    25.1   Coordinating delivery of Products.

    25.2   Facilitating customer relations through market follow-up and reporting to SEAKEEPER, INC., of customer's evaluation of the Products.

    25.3   Informing SEAKEEPER, INC., of any particular concern in the jurisdictions of its places of business, which would affect sales of the Products or development thereof.

**REFIT SALES**

26. SEAKEEPER, INC., will provide help and information required to support any and all refit opportunities provided by the DEALER.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT

 **SEAKEEPER**

27. DEALER will do the following for refit opportunities:

    27.1   Establish contact with customers of new refit opportunities within 24 hours upon receiving or acquiring the new lead.

    27.2   Schedule an appointment to visit said vessel within 48 hours of establishing contact.

    27.3   Deliver a quote to the new refit customer within 48 hours of inspecting the vessel.

    27.4   With exceptions to cases and situations that may require class certification review and/or naval architect review.

    27.5   DEALER will involve SEAKEEPER, INC., to assist with proper gyro sizing and installation plans for gyro refit opportunities.

    27.6   If the DEALER will perform installations, the DEALER must follow the guidelines provided in SEAKEEPER, INC., installation manuals and other supporting documentation.

        27.6.1   Installations include, but are not limited to, the responsibility of the DEALER for assuring the installation quality of the Product and conducting the required due diligence by requesting or providing the engineering and design for a proper installation to support the Product weight and load specifications.

        27.6.2   This scope of responsibility includes ancillary parts & labor removed/installed/engineered, in order to make SEAKEEPER, INC. Installation feasible, including the services of a naval architect.

        27.6.3   DEALER will perform the start-up check, commissioning of the installed Product and the sea trial report. Installation pictures must be sent together with the commissioning form.

        27.6.4   Successful commissioning and submission of the completed commissioning report will trigger acceptance for warranty registration and activation.

        27.6.5   DEALER must submit completed Warranty Registration for each Seakeeper installation.

        27.6.6   Both Commissioning & Warranty Registration forms can be found on the SEAKEEPER, INC. website in the technical library.

        27.6.7   DEALER will provide product orientation and user training for the owner, captain and/or crew.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



## PRODUCT SERVICE

28. DEALERs that will perform tasks that include service and commissioning will be obligated to purchase the required tooling necessary to perform various forms of service on the Products, otherwise DEALER may not be utilized for any form of service or commissioning opportunities.

29. A purchase order for the required tooling must be submitted along with the signed DEALER agreement.

   29.1    SEAKEEPER, INC., will process the shipment of the tooling within 15 days after receipt of the PO and signed DEALER agreement.

   29.2    Required Tooling List:

       29.2.1    Seakeeper Brake Service Tool Kit; see EXHIBIT "D"

           29.2.1.1    Part Number 90485-1SP

           29.2.1.2    For pricing contact support@seakeeper.com.

   29.3    DEALER recommended minimum spare parts purchase:

       29.3.1    DEALER see 'EXHIBIT F' for recommended spare parts purchase

   29.4    ELITE DEALER required spare parts purchase and minimum inventory level

       29.4.1    ELITE DEALER see 'EXHIBIT G' for required spare parts purchase and minimum inventory level.

## NON-WARRANTY SERVICE

30. DEALER may provide non-warranty service when necessary and all charges will be billable directly to the customer (end user) by DEALER.

   SEAKEEPER, INC.'s, expectation is that the DEALER will visit the non-warranty service case within 24 hours of being contacted and provide onboard service within 72 hours of visiting the vessel.

31. Spare and Replacement Parts may be purchased by DEALER from SEAKEEPER, INC., at the following discount level:

   31.1    DEALER: 25% discount from retail (MSRP) pricing.

   31.2    ELITE DEALER: 30% discount from retail (MSRP) pricing.

   31.3    See EXHIBIT "A" For Spare Parts Pricing. Pricing may also be found at www.seakeeper.com in the Partners Only section.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



31.4   Spare, replacement and remanufactured parts do not qualify as components in sales of Products for the dealer tier pricing discounts indicated in Product Sales Section, TABLE 1 (Section 17).

## WARRANTY SERVICE

32.   The DEALER shall perform warranty service for OEMs, yacht dealers and private owners (end users) and will be reimbursed by SEAKEEPER, INC., in accordance with SEAKEEPER, INC.'s, warranty policy (EXHIBIT "C") and payment terms.  The DEALER shall notify SEAKEEPER, INC. if the DEALER becomes aware of any material warranty claim (e.g., a claim which may require replacement of substantially all of the SEAKEEPER stabilizer system.

32.1   SEAKEEPER, INC.'s, expectation is that the DEALER will visit the warranty service case within 24 hours of being contacted and provide onboard service within 72 hours of visiting the vessel.

32.1.1   Warranty Service hours will be paid in accordance with the 'Allowable Hours' as indicated in "EXHIBIT E".

32.2   Additional hours required to complete service will need advance authorization from SEAKEEPER, INC.

32.2.1   Overtime rates are not covered under warranty. Overtime/weekend hours worked by DEALER may be invoiced to SEAKEEPER, INC., at DEALER's regular retail labor rate indicated in TABLE 2.

32.3   DEALER and SEAKEEPER, INC., will reimburse DEALER for warranty labor and travel at 15% discount from DEALER's published rates. Please indicate retail and discounted rates in TABLE 2 below.

## DEALER RATES

| RETAIL LABOR RATE | RETAIL TRAVEL RATE | DISCOUNT LABOR RATE | DISCOUNT TRAVEL RATE |
|---|---|---|---|
| 105 / Hour | 105 / Hour | 89.25 / Hour | 89.25 / Hour |

TABLE 2

33.   SEAKEEPER, INC., will reimburse DEALER for reasonable travel expenses.

33.1   Travel expenses must be approved prior to performance of work.

33.2   SEAKEEPER, INC., will pay automobile mileage at the [agreed rate of $0.54 _____ USD per mile/kilometer] or [IRS standard business mileage rate as announced from time to time].

34.   Warranty reimbursement will be made with payment terms of NET45 after receipt and acceptance of

www.seakeeper.com

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



## CERTIFIED DEALER
NON-EXCLUSIVE AGREEMENT

 **SEAKEEPER**

the invoice and final service report of work performed.

34.1   DEALER must submit completed Service Reports along with invoices within 30 DAYS of completion of warranty work in order to receive prompt acceptance and payment.

34.2   Invoices received more than 90 DAYS after completion of warranty work may not be accepted.

35. SEAKEEPER, INC., will provide spare parts and shipping at no charge for all warranty work.

36. DEALER will be responsible for coordination logistics for incoming shipments and returning any damaged, defective, or used components and parts requested by SEAKEEPER, INC., using an authorized RA (Return Authorization) number provided by SEAKEEPER, INC.

36.1   DEALER may be invoiced for any -warranty spare parts if the damaged, defective or used parts are not returned under an RA within 90 days of completion of warranty work.

## OEM COMMISSIONING

37. In the event SEAKEEPER, INC., requests the services of DEALER for an installation audit and commissioning with an OEM builder, DEALER will be paid at the agreed upon discounted hourly rate indicated in TABLE 2, up to a maximum of 8 hours. Additional hours must be approved by SEAKEEPER, INC.

37.1   This may apply only to the first SEAKEEPER, INC., unit installation and commissioning on the first production hull.

37.2   In the case of first SEAKEEPER, INC., unit installation and commissioning on the first production hull, the following must be completed:

37.2.1   Installation audit and overview of the structure prior to and at installation.

37.2.2   Review of the plumbing.

37.2.2.1   Sea water pump and all related connections, thru-hull fittings, flow rate, etc.

37.2.2.2   Overview and review of the electrical circuits.

37.3   For commissioning services outside the 'local' area for the DEALER, additional travel expenses to be quoted and approved prior to work performed.

38. For DEALER to receive payment for installation audit and commissioning service the following must be completed and reviewed for each installation & commissioning:

38.1   Full installation audit report

38.2   Installation checklist

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**

NON-EXCLUSIVE AGREEMENT



38.3 Gyro start-up and commissioning along with the crew, owner and/or captain. To include gyro operation training.

38.4 Commissioning form

38.4.1 To include any and all sea trial & stabilization data recording(s) as requested by SEAKEEPER, INC.

38.4.2 SEAKEEPER provides a commissioning form document as well as an online commissioning form.

38.4.3 Data captured using the Seakeeper App.

38.4.4 Installation pictures.

38.5 After first model commissioning, additional support requested by the OEM will be billable by the DEALER directly to the OEM, unless other contractual arrangements have been agreed upon.

39. SEAKEEPER, INC. may request DEALER provide ongoing OEM commissioning support.

## ARTICLE IV - PURCHASE OF PRODUCTS BY DEALER, PRICING AND PAYMENT

40. The DEALER shall purchase Products directly and only from SEAKEEPER, INC., unless specific arrangements are made by DEALER for the end users or other third parties to purchase the Products directly from SEAKEEPER, INC., pursuant to the current SEAKEEPER, INC.'s, price list for end-users, in which event the DEALER shall be entitled to receive a commission as shall be determined by SEAKEEPER, INC., on a case by case basis, and based on SEAKEEPER, INC.'s, proceeds actually received from such end-users or third parties referred to SEAKEEPER, INC., by the DEALER.

41. The DEALER's purchase of Products shall be at a price pursuant to SEAKEEPER, INC.'s, then current price list (the "Price List") as shall be provided to the DEALER by SEAKEEPER, INC., from time to time, or where the applicable products are not included in such Price List, the prices shall be pursuant to quotes to be submitted by SEAKEEPER, INC., on a case by case basis. SEAKEEPER, INC., at its sole discretion may provide the DEALER with discount rates with respect to the prices in the Price List.

42. The DEALER price is based on the assigned DEALER Level as indicated in Table 1 included in the Product Sales section.

43. For all non-warranty Trade-In sales, the Tier discount levels in ARTICLE III – PRODUCT SALES do not apply, and DEALER price will be as indicated below:

43.1 A fixed 10% discount to the DEALER.

43.2 A fixed 15% discount to the ELITE DEALER.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



43.3   ALL WARRANTY OR GOOD WILL (out-of-warranty Trade-Ins that are treated as if under warranty), Trade-In or Upgrades will EXCLUDE DEALER discounts and commissions.

44. The DEALER shall pay for Products in accordance with SEAKEEPER, INC.'s, valid payment terms as will be provided as part of SEAKEEPER, INC.'s, quotation on a case by case basis, unless specified, in writing, otherwise.

## TERMS

45. All orders shall be paid in full (pre-pay) prior to shipment from SEAKEEPER, INC.'s facility.

46. Prices quotes EX-WORKS (Incoterms 2010) SEAKEEPER, INC.'s factory in Mohnton, PA.

47. SEAKEEPER, INC., may change the price of the Products by written notice of sixty (60) days before the change takes effect. In the event of a price increase, SEAKEEPER, INC., shall charge the previous price for orders that were submitted to SEAKEEPER, INC., which postmark, email or fax was prior to the expiration of such sixty (60) day notice period.

48. Delivery terms of the Products shall be in accordance with the delivery terms specified in the Price List, a purchase order accepted by SEAKEEPER, INC., in a SEAKEEPER, INC., acknowledge letter or as shall otherwise be agreed in writing by the Parties. No delivery shall be made unless all obligations and/or terms and conditions of the DEALER or the end-user, as applicable, according to this Agreement and the purchase order, have been met.

49. The DEALER shall be solely responsible for receiving payment from the end customer of the Products. All of DEALER's obligations and all payments due by DEALER in accordance with the terms hereunder shall be met and paid when due; and shall in no way be related, affected or conditioned upon end customer's payments or commitments.

50. All payments by the DEALER to SEAKEEPER, INC., shall be made by one of the following methods:

    50.1   Bank wire transfer in US dollars – PREFERRED

    50.2   Approved credit card

    50.3   Certified bank check

    50.4   Or, as shall otherwise be agreed upon by the Parties.

## ARTICLE V-TRADEMARKS AND PROMOTIONAL MATERIAL

51. The DEALER will under its own initiative, carry out appropriate advertising and promotion of SEAKEEPER, INC., and the Products at its own cost (except for financial support from SEAKEEPER, INC., for the co-branding campaign described in Marketing CO-OP section below), it being understood that the DEALER shall coordinate and consult SEAKEEPER, INC., with regards to such materials including the express

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



consent of SEAKEEPER, INC. to all references by DEALER to the Products and of the Trademarks. SEAKEEPER, INC., shall assist DEALER by providing it with reasonable quantities of promotional materials and information, in the English language.

52. SEAKEEPER, INC. hereby grants to DEALER a limited, non-exclusive, non-transferable, non-sublicensable license to use SEAKEEPER, INC.'s Trademarks during the term of this Agreement, subject at all times to SEAKEEPER, INC.'s quality standards, solely in order, and only to the extent necessary, to enable DEALER to carry out its duties hereunder. DEALER shall not include any Trademarks of SEAKEEPER, INC. in DEALER's own business name. The DEALER shall cooperate and assist SEAKEEPER, INC., upon its request, at SEAKEEPER, INC.'s, expense to register and protect the Trademark under SEAKEEPER, INC.'s, name in any jurisdictions in which DEALER has places of business. Any use of a Trademark by DEALER as a licensee of SEAKEEPER, INC. shall at all times be for the benefit of SEAKEEPER, INC. and subject to SEAKEEPER'S INC.'s quality control standards. All use of any Trademark by DEALER shall cease upon expiration or termination of this Agreement. The limited license granted under this Section 51 shall terminate automatically upon expiration or termination of this Agreement.

53. In the common interest of both parties to promote and advertise the Products and SEAKEEPER, INC.'s Trademarks, the DEALER is entitled to organize and coordinate a co-branding advertising and public campaign focused on SEAKEEPER, INC., Products. Parties will annually agree upon such a campaign, (including SEAKEEPER, INC., approval of any use of its Trademarks) and the costs of such campaign will be shared equally by the parties.

53.1 The DEALER is entitled to reimbursement from SEAKEEPER, INC. of up to 50% of direct marketing costs (including the campaign), limited to a maximum 1% of the DEALER's previous year's annual purchases from SEAKEEPER, INC.

53.2 The ELITE DEALER is entitled to reimbursement from SEAKEEPER, INC. of up to 75% of direct marketing costs including the campaign), limited to a maximum 1% of the ELITE DEALER's previous year's annual purchases from SEAKEEPER, INC.

53.3 ALL MARKETING MUST BE PRE-APPROVED BY SEAKEEPER IN WRITING PRIOR TO ANY IMPLEMENTATION, INCLUDING ANY PLACEMENT OF ADVERTISING. DEALER is licensed to use any SEAKEEPER, INC., Trademarks in marketing and otherwise as necessary to carry out its duties under this Agreement, but its use of any such Trademarks is at all times subject to the control of SEAKEEPER, INC., and to strict compliance with quality standards of SEAKEEPER, INC.

53.4 ELITE DEALER is required to use solely the co-branded logo designed and approved in writing by SEAKEEPER, INC. Any use of alternative logos will forfeit co-op reimbursement eligibility.

54. SEAKEEPER, INC., Merchandise: DEALER is entitled to use the marketing CO-OP reimbursement as referenced in Section 53 towards promotional merchandise and apparel orders. Contact marketing@seakeeper.com to receive ordering instructions and a discount code for SEAKEEPER, INC., Merchandise. Any co-op marketing funds not approved prior to December 31st shall be forfeited and will not carry over to the following year.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**

NON-EXCLUSIVE AGREEMENT



## ARTICLE VI - ACCEPTANCE OF ORDERS AND DELIVERY

55. All orders for Products, which SEAKEEPER, INC., receives, are subject to acceptance by SEAKEEPER, INC. The DEALER must provide the proper import papers endorsed by the local appropriate authority, pertaining to the order prior to acceptance of the order.

56. SEAKEEPER, INC., may add additional terms or alter the terms of any purchase order DEALER shall request SEAKEEPER, INC., to accept.

57. SEAKEEPER, INC., may at any time, with advanced notice of 60 days to DEALER, make changes to the specification or content or otherwise of the Products, and/or suspend or cease manufacture and/or sale of the Products, without any liability whatsoever to SEAKEEPER, INC.

58. Unless specified otherwise, delivery of Products shall be EX-Works SEAKEEPER, INC.'s factory in Mohnton, Pennsylvania, USA (Incoterms 2010).

59. SEAKEEPER, INC., will provide DEALER with an acknowledgment of DEALER's order and any other relevant information concerning the delivery date and the progress of the order.

60. SEAKEEPER, INC., will use reasonable efforts to fulfill orders generated by DEALER in a timely fashion. SEAKEEPER, INC.'s, failure to meet delivery schedules and/or decline to accept and/or fulfill orders, shall not constitute a breach of this Agreement.

61. Any purchase order shall be approved solely by SEAKEEPER, INC., at its sole discretion, and shall be in accordance with terms to be decided by SEAKEEPER, INC., including payment terms, shipment and security.

62. If DEALER does not comply with the terms stated in an approved purchase order SEAKEEPER, INC., shall not be obligated to process the order and the DEALER shall have no demand or claim with respect thereto.

63. SEAKEEPER, INC. prices and charges do not include any applicable taxes or any similar third party or government charges. The DEALER shall pay all taxes, charges, levies, duties, usage or other fees and contributions imposed by any competent authority connected with the Products, services and payments (including, without limitation, value added taxes, universal service fund contribution charges, customs duties and fees, document taxes, sales or use taxes, personal property taxes, merchants capital taxes, stamp taxes and other similar taxes and charges, if any) which may be asserted against SEAKEEPER, INC., or the DEALER by any governmental entity with respect to or arising out of this Agreement and any purchase order to be followed (collectively "Taxes"). If any Taxes are so asserted, the DEALER agrees to pay SEAKEEPER, INC., that amount, if any, that ensures that SEAKEEPER, INC., receives the same amount, after reduction for, or payment of, such taxes, as it would have received had such taxes not been asserted.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**

NON-EXCLUSIVE AGREEMENT



## ARTICLE VIII – INSURANCE

64. DEALER agrees that:

64.1 All of DEALER'S insurance policies except Workers Compensation, shall be specifically endorsed to name SEAEEPER, INC., its directors, officers and employees and their respective affiliates as additional insureds;

64.2 DEALER shall cause its underwriter(s) to waive right to subrogation against SEAKEEPER, INC., its directors, officers and employees and their respective affiliates;

64.3 All of DEALER'S insurance policies shall be specifically endorsed to require all required insurance policies to provide primary and non-contributory coverage:

64.3.1 Commercial General Liability, with minimum limits of not less than $1,000,000 per occurrence and $2,000,000 in the aggregate (and for products/completed operations aggregate) combined single limit per occurrence for Bodily Injury and Property Damage, including Contractual Liability for liabilities assumed under this Agreement.

64.3.2 Workers Compensation insurance or equivalent insurance as required by law and regulations in which the work is performed and Employer's Liability insurance with minimum limits of $1,000,000 per occurrence or the limit required by applicable laws, whichever is highest. Where operations are over water, or where the laws hereafter mentioned apply, the policy shall be endorsed to provide U.S. Longshore and Harbor Workers' Compensation Act Liability for statutory limits and Maritime coverage endorsement including The Jones Act or its equivalent.

64.3.3 Automobile liability insurance covering owned, and non-owned and hired autos with minimum limits of $1,000,000 combined single limit for Bodily Injury and Property Damage.

64.4 If applicable, for vessels owned, operated, chartered, or brokered by or for DEALER in connection with this Agreement, DEALER shall carry or require the owner or operator of such vessel to carry (including the Excess/Umbrella Liability coverage):

64.4.1 Hull Insurance for replacement cost value, including but not limited to, coverage for Collision and Tower's Liability, Removal of Wreck on a voluntary basis or where required by law, regulation or contract.

64.4.2 Protection and Indemnity Insurance with limits of $2,000,000 combined single limit per occurrence, including but not limited to, coverage for contractual liability, liability for pollution and cleanup on a sudden and accidental basis, full crew coverage, Collision and Tower's Liability. The phrase "as owner of vessel named herein" and all similar phrases purporting to limit the insurer's liability to that of an owner shall be deleted.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**

NON-EXCLUSIVE AGREEMENT



64.4.3    Charterer's Legal Liability Insurance with limits of $1,000,000 combined single limit per occurrence.

## ARTICLE IX - FORCE MAJEURE

65.  Neither Party shall be liable for any delay or failure to perform any obligations under this Agreement, when such delay or failure results from any Act of God, war, riot, fire; flood, accident, labor disputes of any nature, inability to obtain raw materials, governmental act, regulation, order or rule, transportation conditions or other causes beyond the reasonable control of the parties.

66.  The party claiming relief pursuant to this Article shall notify the other party in writing promptly of the facts indicating the existence of the conditions set forth in this article and the relief claimed thereunder. The parties agree to use best efforts to overcome such conditions. Should such conditions continue unabated, despite the Parties' best efforts to overcome them, for four (4) months from the date of notice given pursuant hereto, then the Party receiving such notice shall have the option to terminate this Agreement or a particular Purchase Order without penalty.

## ARTICLE X - WARRANTIES & SUPPORT

67.  Products sold by SEAKEEPER, INC., to DEALER shall be subject to the then applicable SEAKEEPER, INC.'s, limited warranty as specified in Exhibit "C."

68.  SAID WARRANTIES SHALL BE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH ARE HEREBY DISCLAIMED. IN NO EVENT SHALL SEAKEEPER, INC. BE LIABLE HEREUNDER FOR ANY SPECIAL, PUNITIVE, DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR BREACH OF ANY WARRANTY OR OTHER OBLIGATIONS ARISING OUT OF THE DESIGN, MANUFACTURE OR SALE OF THE PRODUCTS, OR FROM THE USE OF THE PRODUCTS OR ANY INABILITY TO USE THE PRODUCT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

69.  Warranties shall not apply to any Products which have been:

69.1    Repaired or altered other than in accordance with the terms of SEAKEEPER, INC.'s, standard limited warranty.

Or,

69.2    Installed or used in an unauthorized or improper manner, or without following normal operating procedures.

## ARTICLE XI - TERM AND TERMINATION

70.  Unless sooner terminated in accordance with the provisions hereto, the initial term of this Agreement shall commence on the date shown on the first page of the Agreement and shall run through December 31st of the following calendar year.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**

NON-EXCLUSIVE AGREEMENT



71. Upon the expiration of the initial term or any subsequent term, the Agreement shall be automatically extended for additional terms of one year, unless either Party serves the other with a written notification of its wish not to extend the term of the Agreement, at least sixty (60) days before the end of the initial term of the Agreement or the end of any renewal term, as applicable.

72. During the term of this Agreement or any renewal thereof, this Agreement may be terminated by SEAKEEPER, INC., by written notice for any one or more of the following causes:

72.1 If DEALER defaults in making any payment required by this Agreement or breaches any provision hereof and fails to remedy such default or breach within fifteen (15) days after receipt of written notice by SEAKEEPER, INC.

72.2 If DEALER shall become or is declared insolvent or bankrupt, or a receiver or trustee is appointed for DEALER, or an assignment for the benefit of creditors is made by DEALER or if DEALER becomes unable to meet its debts as they fall due.

72.3 If DEALER shall commence a voluntary case or other proceeding seeking liquidation, reorganization, or other relief with respect to itself or its debt, or seek the appointment of a trustee, receiver, liquidate, custodian or other similar official, or shall not resist any involuntary case or other proceeding commenced against it.

72.4 If DEALER conducts itself or its business so as to adversely affect the good name, reputation or goodwill of SEAKEEPER, INC., or the Product, or uses any Trademark in a manner not approved by SEAKEEPER, INC.

72.5 If DEALER, without the express written consent of SEAKEEPER, INC., moves its place of business from which it provides services under this Agreement to a new location more than ten (10) miles from its prior location.

72.6 If any change in control of the ownership of DEALER occurs, without the express written consent of SEAKEEPER, INC.

73. Upon any notice of termination for any reason, SEAKEEPER, INC., at its option, may deliver any Products for which it has accepted an order from DEALER or may cancel the order completely.

74. In the event of termination of this Agreement for any reason, DEALER shall have no rights to damages or indemnification of any nature, specifically including commercial severance pay of loss of future profits, expenditures for promotion of the Products or other commitments in connection with the business and goods of DEALER. DEALER represents and warrants that this non-exclusive Dealer Agreement is not subject to any franchise or business opportunity laws in any jurisdiction in which Dealer operates, nor is it subject to any dealer or distributor termination laws in such jurisdiction, and DEALER waives and agrees not to exercise any purported rights under any such laws.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



## ARTICLE XII - DUTIES OF DEALER UPON TERMINATION

75. If this Agreement is terminated for any reason, DEALER shall immediately:

75.1   Cease and refrain from the sale, promotion and offering of the Products.

75.2   Return to SEAKEEPER, INC., any promotional materials associated with the Products.

75.3   Cease use of all Trademarks and remove them from all signs, advertising, letterheads, Web sites and other materials on which they may appear, and discontinue all representations from which it might be inferred that any relationship exists between the Parties.

75.4   Surrender to SEAKEEPER, INC., or its nominee any and all import permits, trademark or other registrations, licenses, exemptions from customs duties and governmental consents of any nature whatsoever which DEALER may have obtained in connection with the Products or its obligations there under.

75.5   The DEALER shall not use, transfer or publish any confidential information of SEAKEEPER, INC., including but not limited to know-how, technical data, trade secrets, diagrams, algorithms, customers, DEALER and supplier lists, or any other information related to the Products or to the way SEAKEEPER, INC., manages its business, all of which are trade secrets of SEAKEEPER, INC.

75.6   Return to SEAKEEPER, INC., immediately upon SEAKEEPER, INC.'s, request, all demo material, software, documents either in a paper form or in an electric form, provided to DEALER, or generated by DEALER in connection with its obligations under this Agreement, and any copies of duplications thereof.

75.7   Fully co-operate with SEAKEEEPER, INC. in the transition and minimize any disruption to customers, including, without limitation, turning materials over to another SEAKEEPER DEALER as requested by SEAKEEPER, INC.  SEAKEEPER, INC.  agrees to repurchase any inventory of Product parts purchased by DEALER within the last 6 months prior to termination notice, which are in good condition, at their actual cost.  DEALER shall return any Warranty or replacement parts in its possession to SEAKEEPER.

75.8   Shipping costs shall be borne equally by both Parties.

## ARTICLE XIII-INDEMNIFICATION / HOLD HARMLESS

76.  The DEALER shall be solely responsible for any liabilities and commitments with respect to end customers of the Products and shall be solely responsible for the acts of its directors, officers, employees and agents, and shall indemnify, defend and hold harmless SEAKEEPER, INC., and its directors, officers, employees and agents from and against any and all liability, exposure or claim, including attorney fees and expenses, of any nature against SEAKEEPER, INC., arising therefrom or from any breach of DEALER's obligations or warranties under this Agreement.

77.  The laws and regulations of the jurisdictions in which the DEALER is operating shall apply to the conduct

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



of the activities of DEALER pursuant to this Agreement, and DEALER shall indemnify, defend and hold SEAKEEPER, INC., and its directors, officers, employees and agents harmless from any and all liability, exposure or claim, including attorney fees and expenses arising from DEALER's actions or failures to act under such laws and regulations.

78. SEAKEEPER, INC., has the right to approve of any attorneys proposed by DEALER to handle such defense, and if SEAKEEPER, INC., does not approve of such attorneys, or if DEALER fails to diligently provide a defense, SEAKEEPER, INC., may retain its own attorneys to control and defend any claim and DEALER shall be obligated to reimburse SEAKEEPER, INC., for all attorney fees, expenses and damages incurred by SEAKEEPER, INC., in such defense.

## ARTICLE XIV - CONFIDENTIALITY

79. SEAKEEPER, INC., has imparted and may from time to time disclose to DEALER certain confidential information. DEALER hereby agrees that it will use such confidential information solely for the purpose of this Agreement and that it shall not disclose, whether directly or indirectly, to any third party such information other than as required to carry out the purposes of this Agreement. In the event of such permitted disclosure, DEALER shall obtain from such third parties duly binding agreement to maintain in confidence the information to be disclosed to the same extent at least as DEALER is so bound thereunder.

80. The DEALER shall not copy, reverse engineer or otherwise duplicate the Products or any part hereof, either by itself or by any employee, officer, or agent or any third party. DEALER shall inform SEAKEEPER, INC., of any copy, reverse engineering activity or any duplication or attempt to copy, reverse engineer or duplicate a Product or Product part done by a third party.

## ARTICLE XV - GENERAL PROVISIONS

81. Assignment – the DEALER may not assign its rights or obligations under this Agreement without SEAKEEPER, INC.'s express written consent. DEALER is expressly prohibited from using and/or retaining subcontractors for the performance of this Agreement without the prior written consent of SEAKEEPER, INC. SEAKEEPER, INC., may assign its rights and obligations under this agreement to any affiliated company in SEAKEEPER, INC.'s, group or any successor to its business operations. Any attempted assignment by DEALER without SEAKEEPER, INC.'s consent shall be void and of no effect.

82. English Language - The English language of this Agreement shall be the sole operative language of this Agreement and any and all communications required or desired among the parties hereto.

83. Governing Law – This Agreement shall be governed by and construed solely in accordance with the procedural and substantive laws of the State of Maryland, USA without regard to the conflicts of laws and provisions thereof. The parties agree that the Convention for the International Sale of Goods shall not apply to this Agreement.

84. Inconsistent Provisions - In the event that the terms, conditions or other provision of any sales document (but not the purchase order) conflict with this Agreement, the provisions of this Agreement shall prevail.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT



85. Settlement of disputes - The Parties shall attempt to settle any dispute arising out of or relating to this Agreement in an amicable fashion. In the event that such efforts should fail, the Parties agree and covenant that the exclusive jurisdiction and venue for any matter concerning this agreement shall be the state or federal courts in Maryland, USA, and DEALER expressly consent to such jurisdiction and venue. DEALER agrees that service of any notice or pleading upon the office of the Maryland Secretary of State, whom DEALER hereby appoints as its agent for service of process, with a copy mailed to DEALER at its last known address, shall constitute valid service of process upon DEALER.

86. Non-Waiver and Severability - No failure by any party to insist upon the strict performance of any provision of this Agreement or to exercise any right or remedy thereunder, shall constitute waiver of any such breach. No waiver shall affect the remainder of this Agreement. Should any provision of this Agreement be found invalid or unenforceable by a court of proper jurisdiction, such finding shall not indicate the remaining provisions hereof, and such remaining provisions shall continue in full force and effect. Upon such findings of invalidity or unenforceability the parties shall immediately re-negotiate reasonably and in good faith the provision found to be invalid, as well as any other terms and provisions hereof, as necessary to achieve as nearly as possible their procedural, economic and remedial expectations as set forth herein and to mitigate the impacts resultant from such finding of invalidity or unenforceability.

87. Notices - Any notice or communication shall be deemed given when personally delivered or dispatched by overnight courier service, or when sent by telex, facsimile or e-mail addressed as follows (and with receipt acknowledged in the event of telex, facsimile and email) to the parties at their addresses below, to the attention of their Presidents.

88. Entire Agreement and Amendments - This Agreement constitutes the entire agreement between the Parties, and supersedes all previous agreements heretofore made by the Parties and may be modified and amended only by a writing signed by a duly authorized representative of the Party or Parties to be charged.

89. IN WITNESS WHEREOF, DEALER and SEAKEEPER, INC., have caused this Agreement to be executed in duplicate by their respective duly authorized officers, effective as of the date first shown above.

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



**CERTIFIED DEALER**
NON-EXCLUSIVE AGREEMENT

 SEAKEEPER

## CONTACT INFORMATION

Seakeeper

Address   44425 Pecan Court, Suite 151
California, MD 20619 USA

Phone   +1.410.326.1590
Email   sales@seakeeper.com
Website   www.seakeeper.com

Sales Rep   Nick Dwyer
Name

ndwyer@seakeeper.com
Email

Service   Kevin Zervas
Name

kzervas@seakeeper.com
Email

Marketing   Maggie Meredith
Name

mmeredith@seakeeper.com
Email

**Starboard Yacht Group**

Address   850 NE 3rd St Ste 208
Dania Beach, FL 33004
Same as shown on page 1

Phone   954-376-5400
Email   jake@starboardyacht.com
Website   www.starboardyacht.com

Main Contact   Jake Stratmann
Name

jake@starboardyacht.com
Email

Contact listed above should be used for all communication

Service   Chris Rizo
Name

chris@starboardyacht.com
Email

Marketing   Rob Anderson
Name

Rob@starboardyacht.com
Email

Admin   Theresa LaRusso
Name

Theresa@starboardyacht.com
Email

## PLEASE CHECK ALL THAT APPLY

☑ Installation Center
☑ Service Center
☑ Mobile Capabilities

DocuSign Envelope ID: 6223FB8A-C7AE-4BC9-A0CE-708441C0D1A7



### CERTIFIED DEALER
NON-EXCLUSIVE AGREEMENT

 SEAKEEPER

This agreement is acknowledged, accepted and agreed to by:

SEAKEEPER, INC.

*Rebecca Smitha*
Signature

Rebecca Smitha
Name

VP Finance
Title

April 18, 2019 | 11:46 AM PDT
Date

DEALER:

_____
Signature

Jake Stratmann
Name

Managing Member
Title

4-17-19
Date

EXHIBIT "A"
Spare Parts Pricing Provided Upon Request

EXHIBIT "B"
Options, Accessories and Shipping Price Lists

EXHIBIT "C"
Standard Limited Warranty Policy Provided Upon Request

EXHIBIT "D"
Allowable Hours for Warranty Service Provided Upon Request

EXHIBIT "E"
Hydraulic Brake Service Kit and Bushing Replacement Tools

EXHIBIT "F"
DEALER recommended minimum spare parts list

EXHIBIT "G"
ELITE DEALER required minimum spare parts purchase list